## Wells, et al. v. Harned, et al.

(Decided May 25, 1917.)

### Appeal from Nelson Circuit Court.

1. Wills—Intention of Testator—Construction.—A cardinal principle governing the construction of a provision of a will, requires the ascertainment of the intention of the testator, and this may be arrived at by a consideration of the entire instrument together with all the circumstances attendant upon its execution.

2. Wills—Construction.—A provision in a will that certain grandchildren of the testator should have a home on a given farm, so long as they remained unsettled in life, gave such grandchildren a right to a home on the farm only until they arrived at the age

of maturity and have established new homes or places of abode elsewhere, and does not entitle such grandchildren to return to the farm and receive support after once, arriving at maturity and having acquired new homes and formed new relations for themselves.

3. Trusts—Management of Trust Estate—Remaindermen.—A trustee of an express trust, created by will, who is given full authority and control over the lands belonging to the trust estate, with power to take and apply the proceeds thus arising to certain uses, may, in the exercise of a reasonable discretion, lease or let the lands to a tenant, but if in such case the tenant in possession commit waste, the remainderman may maintain an action to prevent the same.

C. T. ATKINSON for appellants.

VICTOR L. KELLY, JOHN S. KELLY, NAT W. HALSTEAD, MORGAN YEWELL and R. C. CHERRY for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming on original appeal and reversing on cross-appeal.

In September, 1900, Ben Harned made and executed his last will and testament, whereby he disposed of all his property both real and personal. He left surviving him a widow and several children, among them a son, the appellee, George Harned. By the third paragraph of his will he devised to his son, George, a certain farm of 285 acres in trust for his children "born and to be born," and providing that "he shall support his said children from the rents, uses and profits during their joint and several lives, and at my son's death, to my said grandchildren absolutely and forever, and it is my desire that none of said grandchildren shall have the right or power to sell or dispose of their interest in said lands, or any parts of same, or to charge or encumber the same in any manner during the continuance of this trust, or during the joint or several lives of the said children and George Harned." The children were all young at the time of the making of the will of their grandfather, and the appellee, George Harned, was residing upon the farm in question, with the children. Before the execution of the will George Harned had been adjudged a lunatic and confined in an asylum for the insane, but had been released and, by judgment of the court, found to be *compos mentis*, and this no doubt, was the moving cause that brought about the creation of the trust estate in the children, the testator, Ben Harned, having devised to his other children certain lands in fee

simple. The children of George Harned were all of mature age at the institution of this action, except one boy, nineteen years of age, and an unmarried daughter about twenty-two years of age. Most of the children were married and had homes of their own. The appellant, Eula Wells, is the oldest child, having married Charles Wells. After living together for some time they separated, and she returned to the old homestead with her child, and this was the beginning of the trouble.

The trustee, George Harned, according to the evidence, was subject to mental aberrations, and often indulged in irrational and unreasonable talk. He was possessed of certain hallucinations and thought himself under a spell, which was oppressing and persecuting him. However, it appears from the testimony of a number of farmers who lived around him and owned land next to him, that he was an average agriculturist, planting his crops in season, cultivating them in the usual and customary manner, producing the average yield, which he harvested in due course. Finally when his children all left him, except the two younger ones who were not living on the farm, he being old and infirm, entered into a contract whereby he leased the farm for the year 1914, with the privilege of the lessee of continuing the term for four additional years, at the price of $1,235.00 per annum, money rent. At this time this action had been instituted, seeking the removal of George Harned as trustee, and the appointment of a new trustee, on the ground that he was incapable, mentally, of administering the trust. Later on several different amended petitions were filed, one of which alleged the leasing of the farm, charging this to be a violation of the trust, and asking that the trustee be removed and a new trustee appointed.

This action involves the construction of the third paragraph of the will of Ben Harned. This paragraph is as follows:

"I give, will and bequeath to my son George Harned at my death in trust for the sole use and benefit of his children now living or that may be born hereafter from any wife he may have, the farm on which my son now resides in Nelson county, Kentucky, which I purchased from T. P. Lewis and wife containing 285 acres and he shall hold said farm in trust for his said children, born or to be born, and shall support his said children from the rents, uses and profits during their joint and several lives, and at my sons death to my said grandchildren

absolutely and forever, and it is my desire that none of the said grandchildren shall have right or power to sell or dispose of their interest in said land or the proceeds of same, or to charge or encumber the same in any manner during the continuance of this trust or during the joint and several lives of the said George Harned and said children and should any of the said beneficiaries, during the existence of this trust die without children then the interest of said party so dying in said land shall go to and pass to the survivors, but if such beneficiaries die leaving children, then their interest in said land shall go to their children, and it is my will that should any of said beneficiaries leave said farm during the existence of this trust and cease to reside thereon as a member of my sons family, then the interest of the party so leaving said farm and ceasing to be a member of my said sons family shall cease and determine during the absence of said party or parties or during said trust and the same shall enure during such absence to the exclusive use and benefit of the children who continue to remain on said farm and members of my sons family. It is my will that my son shall manage and have full and undisputed control of said farm as trustee for his children and said beneficiaries, but he has no right, power or authority to sell said land or any part of same or to charge or encumber the same with any debts or liabilities during the trust and all such power or authority is forbidden except it is my will and desire that my said son is to manage control and run said farm in his discretion and judgment for the best interest of his said children. It being my object to thus provide a home and a competency by which each of said grandchildren may be raised to the years of maturity and have a home so long as they or any of them is unsettled in life, and for this purpose I make my son such trustee during his natural life, to sell such produce raised on said farm, defraying all necessary expenses of his said family and himself, and to keep up and cultivate said farm and supply it with all necessary stock and tools to run the same and for this purpose he is authorized as trustee to sell and dispose of all the surplus proceeds of said land. It is my will that my said son George Harned shall be allowed to act as such trustee without executing any bond as such trustee, and it is my desire that he be allowed to so act without restraint, and any errors or miscalculations of judgment he is in no wise to be accountable for because it is my

will that he act as such trustee during his natural life and that no mistake on his part as trustee shall be any cause for his removal. This land is so given in trust to my son George Harned for his children, together with all other advancements made to my said son are all together valued by me at six thousand five hundred dollars."

Issue being joined and proof taken, the case was submitted to the court, whereupon the chancellor rendered an opinion construing the third paragraph of the will of Ben Harned, and dismissing plaintiff's petition, holding that George Harned, the trustee under the will, was entitled to the occupancy and full control of the farm during his natural life and to exercise the trust without interference from any person, or persons interested therein; the rents and profits from the farm to be applied to the support and maintenance of himself and such family as remained with him on the farm; and, further, that if at any time any of the children should become unsettled in life, and in good faith should desire to live with him, it is the duty of the trustee to furnish such child or children a home, or contribute to his or their support. From this opinion and judgment the daughter, Eula Wells, &c., prosecute this appeal, and George Harned, &c., pray a cross-appeal.

By the words "settled in life," as used in the will, the testator meant the acquisition or establishment of a separate home or place of abode, by marriage or other act, which indicated a fixed intention to so remain or reside permanently, and to abandon the farm held in trust as a home. After once becoming so "settled in life" the testator did not contemplate a desire on the part of the *cestui qui trustant* to return to the old home, and no provision is made for such emergency. It was natural to presume that the grandchildren, after attaining maturity and "settling in life," would continue in the new relation and in the new home, and would not find it either desirable or necessary to return to the fireside of the father.

This paragraph of the will, read in the light of all the surrounding circumstances and the evident intention of the testator, as gathered from such surrounding circumstances, and the language of the paragraph, gave to the son, George Harned, a life estate in the lands, with remainder to his children, then living or afterwards born, absolutely and forever; the father, George Harned, to act

as trustee in the management and control of the farm, using the rents and profits arising therefrom, for the support and maintenance of himself and family, but with no power or right to sell, mortgage, or otherwise encumber the lands. It was the obvious intention of the testator to provide a home and place of abode for his mentally enfeebled son, George Harned, during his natural life, he to manage and control the farm, the same to be a home and place of abode not alone for himself, but also for each of his children born and to be born, from which, at maturity, they could go out and establish homes for themselves, the benefits of the farm to go to the remaining members of the family until all of the children, if the father should continue to live, had reached their majority and mature life and had left the old homestead and gone forth and established new relations and acquired for themselves new homes, and when all the children had gone to new homes, the father, George Harned, if he continued to live, was to manage and enjoy the benefits of the farm during his natural life. It cannot be reasonably inferred from the language of the will and from the surrounding circumstances and the purposes intended to be accomplished by the creation of the trust, that the children of George Harned, who had attained their majority, arrived at maturity, and established new relations and acquired new homes for themselves elsewhere, were entitled to return to the homestead, provided in the will, and there receive support and maintenance at the expense of the aged father, George Harned. This would be a burden upon the trustee, which the solicitous father would not have willingly cast upon his unfortunate son. Nevertheless, this is the chief contention of the appellants; but they also insist that the lease contract and the sale of the personal property on the place, was the willful violation and a breach of the trust, justifying the court in removing the trustee.

The power conferred upon the trustee, by the terms of the will, are broad enough to authorize him, under the circumstances in this case, to rent or let the farm, and collect and apply the proceeds arising therefrom, according to the uses appointed in the will. The trustee must not commit or allow waste, and in case the tenant in possession, commit or threaten waste, the trustee or the remainderman may, by proper action, have relief.

The appellees, George Harned, &c., contend that the circuit court properly construed the third paragraph of

the will, except, they complain, the chancellor erred to their prejudice in holding that the children, who had come to maturity and had established themselves in homes elsewhere, were entitled to return to the old homestead, at will, and be supported and maintained by the trustee; or, if the farm be leased, then the trustee to contribute to the support and maintenance of such child or children.

Obviously it would be unjust to allow the children of George Harned, after going out, marrying and establishing homes and acquiring families, to return to the trust estate and exact and acquire support and maintenance of the trustee, and it cannot be reasonably inferred from the language of the will that the grandfather, Ben Harned, contemplated such a thing by the third paragraph of his will. But, it seems that is what the appellants are seeking in this case. It was the intention that all the children of George Harned should have a home and support until they arrived at mature years, and even until they formed new relations and acquired new homes, but not afterwards, for this would place too great a burden upon the trustee and one which cannot be presumed to have been intended by the provident grandfather, who so carefully and thoughtfully undertook, in his will, to provide and care for his unfortunate son. Instead of casting burdens upon him, such as the appellants now seek to place upon the trustee, it was the intention and purpose of the grandfather to relieve and shield, as far as possible, his unfortunate son from such exacting conditions, and to place him beyond the reach and control of strong-minded, designing persons.

The farm was not only a home, but was large enough to provide a place of employment for the entire family and to yield ample support if reasonably managed and cultivated. While the grandfather gave his son full control and management of the farm during the life of the son, yet it was both the legal and moral duty of the grandchildren to render such assistance in the cultivation of the farm as was reasonably necessary to provide the comforts of life so long as they remained members of the family on the farm. The younger members of the family who have not left the parental roof and are yet "unsettled in life," if any there be, are yet entitled to a home on the farm, or its equivalent, but such child or children must manifest a willingness to contribute a fair share of the effort necessary to provide a support, and in good faith yield obedient submission to the rule of reason in

the home. They are not entitled to rest entirely upon the trustee, but must engage themselves at some useful employment. No doubt but that the father would have refused to rent or let the farm had his children, or some of them, remained on the place to keep him company and to cheer the home.

For the reasons indicated, the judgment is affirmed on the original appeal, and reversed on the cross-appeal in so far only as the chancellor decreed that the children of George Harned, after maturity, becoming unsettled in life, should have a home with the trustee as a member of his family if, in good faith, they desired it; and, in case the trustee is unable to supply such a home by reason of the lease of the property, then to contribute to the support of such child, or children, who have become unsettled in life. This cause is remanded for further proceedings not inconsistent with this opinion.